Mr. Justice Noil
delivered the opinion of the court.
The principle which has been so long established in this state, that a sound price implies a warranty of soundness of property, has been found in practice to open the field of litigation to such a boundless extent, that it seems to become'our duty to endeavor to define its limits with some more precision than heretofore, and to set some bounds to the mischief which is likely to flow from it. This doctrine is said to have been derived from the civil law, and that as we have adopted a part, we must take the whole of the civil'law relating to the subject. First, it was applied the physical soundness of the property, where there was *221 no express contract. Next, it was extended to cases where there was an express written warrant}’, beyond the terms of such warranty. And now it is attempted not only to go beyond the express written warranty, but to extend it; to the moral qualities also. That the principle adopted by our courts, that soundness of property shall be implied from the soundness of price, may not be theoretically, and perhaps morally correct, I am not prepared to say. But if has been found, by experience, to be too refined for practical purposes, and furnishes a pretext in every case of a bad bargain to set aside the contract under a pretence of some defect in the property. I have no idea, myself, that the Judges, who first established the doctrine, intended to introduce a rule of the civil law in opposition to the com ■ .non law. I believe that it was then considered as a rule of the common law. Woodison, in so many words, lays down the law to be soj (vol. 2, 415.) iknd other respec - table authority may be found in its support, (Powell on Con. 150.) It is conceded that selling for a sound price carries with it a warranty of title; and reasoning from analogy, one would pérhaps conclude that soundness might as well be implied as title. By the common law a man may recover back money paid on a consideration which has failed. (Moses vs. Macferlan, 2 Burr. 1012, Shone vs. Webb, 1 D. & E. 732, Straton vs. Rastalls, 2 do. 366.) And where can the consideration be said to have failed, if it be not where a person has purchased property apparently sound, but which contains a secret defect undiscovera • ble by the most scrutinizing eye, which renders it entirely useless ? It is admitted that where one man gets the money of another into his hands, which cquo et bono he ought not to retain, it may be recovered back in an action for me ney had and received j and where can the depiands ot equity and good conscience be more imperious, than where, a person has sold as sound a piece of property which is ut terly unsound and worthless. So where the property i-defective in part, the consideration has failed pro tanto. and the money may be recovered back. Every policy oí *222 insurance is predicated on an implied (warranty, that the vessel is sea worthy; which is only another name for soundness. In the case of Parkinson & Lee, (2 East, 314,) Justice Gross says, “that before the case in Douglass, (by which I suppose he means the case of Stewart and Wilkins,) it was a current opinion that a sound price given for a horse was tantamount to a warranty of soundness, but that when it came to be sifted, it was found to be so loose and unsatisfactory a ground of decision, that Lord Mansfield rejected it.” It is also worthy of remarle, that when the decision of Stewart and Wilkins was made, there was but little intercourse between that country and this. — ■ That decision probably was not known here for many years after it was made. What is the conclusion then to be drawn from all these authorities ? Not that the Judges of this state have adopted the civil law in opposition to the common law ; but that when the common law was unsettled and fluctuating, while the Judges in England were sifting it on one side of the Atlantic, the Judges in Souths Carolina were sifting it on the other, and that they came to different conclusions on the same question. Indeed, it 'seems, owing to the high authority of Lord Mansfield alone, that the law was so settled in England. For if he had adopted the then prevailing opinion, the law would have been in England, at this day, the same as it is in this state. Ido not think, therefore, that the Judges of this state are chargeable with a departure from the common law, although they have differed with the Judges in England on a particular question. It is not the less a principle of the common law, because it is conformable to the civil law also. Many of the principles of the civil law have been incorporated into and made a part of the com-ino» law. Indeed the Roman cocjes have furnished a rich source from whence many of the best principles of the common law have been derived. But we can only adopt the civil law, where it comports with the general principles of the common law» and then subject to the rules of the common law on the same subject. I feel authorized tq *223 ío conclude, therefore, that when the courts of this state established the rule that a sound price was tantamount to a •warranty of soundness of property, it was as a rule o) the common law, and not of the civil law. And lastly, the act of 1712, declares, that the common law shall be the law of this state. And it is not to be presumed that the Judges, would feel themselves authorized to adopt any other law in opposition to the express letter and spirit of an act of the legislature. Having differed with the English Judges on the subject of implied warranties, imposes on us no obligation to carry the doctrine to the mischievous extent to which the civil law would carry us. We ought still to be governed by all the common law rules in relation to the subject, except so far as we are bound by the decisions of our own courts. I do not mean to say I should have concurred in opinion with the learned judges of that day.— On the contrary, I think it is to be regretted that such, a decision has ever taken place, for the reasons already expressed. But we have still the satisfaction to find the principle has never been extended to the moral qualities of sf 'slave. That cases have passed sub silentm, where such a defence has been' allowed, I have no doubt. From expressions used in some of the reported cases, it appears that the distinction has not always been observed, although the question is not directly involved in any of them. There does not appear to have been any7 direct decision on the point. The impossibility of fixing any scale by which the moral qualities can be graduated, is a conclusive reason why such a principle should not be allowed. The character of a slave depends so much upon the treatment he receives, the opportunities he has to commit crimes, and the temptation to which he is exposed, that we can form but a very imperfect opinion of it, abstracted from those considerations. A vice which would render him worthless in one situation, would scarcely impair his value in another. A habit that would render him useless to one man, would scarcely be considered a blot upon his character in the hands of another. If it should be extended to *224 one fault, it must to all, from the highest crime which man is capable of committing, down to the smallest deviation from the strictest line of moral rectitude,, Such a decision from this court, when publicly known, would be worse than opening Pandora’s box upon the community-1 am satified, therefore, that such .a defence ought not tc ■be allowed, except where if is supported by an express warranty or actual fraud.
It is unnecessary, therefore, so far as regards this particular case.; to express any opinion on-the other ground.— Still it may be well that it should not be passed over unnoticed. I have always considered if a settled rule of the common law,- that when a contract is reduced to writing, the parties are never presumed to have' undertaken any thing more.than is contained in the -writing itself. An express warranty, therefore, of any particular thing or quality,- would seem to exclude the idea of any other. — ■ And when a written warranty exists, an express parol warranty, -varying -from it, ought not to be admitted. In the case of Munford vs. M'Pherson, (1 Johnson's Rep. 414,) Chief Justice Kent asks emphatically, “ Can a case be found where an action has been brought on a parol contract made une fiatu with a written contract.” And Judge Thompson, who delivered the opinion of the court,-says, “ it cannot be a safe or sftlutary rule to let a contract rest partly in'writing- and partly in parol. Whenever it is reduced to writing, that is tobe considered as evidence of the agreement, and every thing resting in parol becomes thereby extinguished.”
In the case of Wells & Spears, decided in Charleston at the last term, this court did sustain an action brought on an implied warranty of soundness, where there was a bill of sale- containing only a warranty of title. I then differed with the majority of the court in opinion ; and I believe the decision was admitted to be contray to- the common law doctrine. But as a- practice had long prevailed of allowing such actions, without regarding the distinction between cases where there was a written warranty *225 una where there was none, it was thought that it woula be dangerous to innovate upon it. But that decision applies to cases of unsoundness only. Whenever we depart from, á settled rule of the common law, I feel- as if I were walking per ignes suppositos cineri doloso. We cannot foresee to what it will lead. Some unsuspected mischief lurking Under a specious good is apt to spring up to bear witness of an error which it is too late to correct. The common law is the result of wisdom and experience, and ought riot to be invaded without great caution and deliberation.
Gregg, for the motion'.
De Saussure, contra.
In the present case the court are unanimously of opinion the defence ought not to be allowed. And I hope this decision will close the door which was just unfolding a scene of litigation hitherto unknown to this countryI feel no disposition on my part, to add to the accumulated weight s of business under which' we are already tottering; impo-nere Pelio ossam, atque ossce frondosum envolvere ohjm--pum.
The motion for a new trial must be granted.
Justices Colcock, Johnson, Richardson and Huger« cor. ■ curved.